| | |
|---|---|
| THADDEUS J. CULPEPPER, ESQ (SBN 220194) <br> NAME <br> REG NO. 77028-112 <br> PRISON IDENTIFICATION/BOOKING NO. <br> MDC LOS ANGELES, PO BOX 1500 <br> ADDRESS OR PLACE OF CONFINEMENT <br> LOS ANGELES, CA 90053 <br> Note: If represented by an attorney, provide name, address, & telephone number. *It is your responsibility to notify the Clerk of Court in writing of any change of address.* | PAID OCT 2018 Clerk, US District Court COURT 4612 <br><br> FILED <br> 2018 OCT 12 PM 3:53 <br> CLERK U.S. DISTRICT COURT <br> CENTRAL DIST. OF CALIF. <br> LOS ANGELES <br> BY: ___ |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THADDEUS J. CULPEPPER, ESQ <br> FULL NAME (Include name under which you were convicted) <br><br> Petitioner, <br><br> v. <br><br> RICHARD BIDDLE, ET AL. <br> NAME OF WARDEN, (or other authorized person having custody of petitioner) <br> Respondent. | CASE NUMBER: <br> CV 18-8826-CJC <br> To be supplied by the Clerk of the United States District Court <br><br> CR 2:18-CR-00685-CJC <br> Criminal case under which sentence was imposed. <br><br> **PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY** <br> **(28 U.S.C. § 2241)** |

### INSTRUCTIONS - READ CAREFULLY

This petition shall be legibly handwritten or typewritten and signed by the petitioner under penalty of perjury. You must set forth CONCISELY the answer to each question in the proper space on the form. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

You must not attach separate pages to this petition except that ONE separate additional page is permitted in answering Question No. 9.

Upon receipt of a fee of $5.00, your petition will be filed if it is in proper order.

If you are seeking leave to proceed *in forma pauperis* (without paying the $5.00 filing fee and other court costs), then you must also execute the declaration on the last page, setting forth information that establishes your inability to pay the fees and costs of the proceedings or to give security therefor. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution. If your prison account exceeds $25.00, you must pay the filing fee as required by the rule of the district court.

When the petition is completed, the original and 3 copies must be mailed to the Clerk of the United States District Court for the Central District of California, Edward R. Roybal Federal Building & U.S. Courthouse, 255 East Temple Street, Suite TS-134, Los Angeles, California 90012, ATTENTION: Intake/Docket Section.

Only one sentence, conviction, or parole matter may be challenged in a single petition. If you challenge more than one, you must do so by separate petitions.

Thaddeus J. Culpepper, Esq. SBN 220194
Reg. No. 77028-112
MDC Los Angeles
P.O. Box 1500
Los Angeles, CA 90053

In Propria Persona

UNITED STATED DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Thaddeus J. Culpepper, Esq. )
      Petitioner )
)
v. )
)
)
Richard Biddle, Francis Hard- )
iman, Ronald Coen, William C. )
Ryan, et al. )
------------------------------)

Case No.
IMMEDIATE STAY REQUESTED
EX PARTE
28 USC § 2241, 2242
FRAUD
42 USC § 1983
Conspiracy to violate Title III
Adversay Hearing Requested
   pursuant to SupplementalRule E

COMES NOW Petitioner Thaddeus J. Culpepper, Esq.,
Petitioner does hereby petition as follows:

1. The following person used the color statute to prevent Petitioner from further investigating and revealing publically disqualifying conflicts of interest: RonaldCoen California State court judge, William C. Ryan, California State court judge, Richard Biddle, Los Angeles County Sheriff investigator, Francis Hardiman, same, Stefan C. Mrakich, Los Angeles County District Attorney, Jackie Lacey, same.

2. Petitioner is a licensed California attorney who, in the Course of defending Marion Knight in cases numbered TA136401 and SA089020, learned and investigated disqualifying conflicts of interests held and cultivated by the above named personnel.

3. The above named persons shall be identified herein as "Personnel."

4. When these court, law enforcement, and judicial officers learned that Petitioner was in receipt of and understood the nature and cause of the disqualifying conflicts of interests the Personnel worked cooperatively and as agents of one another to create a false narrative to be used fraudulently against Petitioner and his client. The Personnel used this false narrative in bad faith to harass, intimidate and fraudulently separate Petitioner and his client. The Personnel also used this false narrative as a means to covet, steal, monitor and disseminate the private, privileged, sacred and confidential attorney client communications existing between the Petitioner and his client. Thus, through false means the Personnel interfered and fully infiltrated Petitioner and his clients privileged defense space.

5. This Petition sets forth the means by which the Personnel obstructed justice & deprived Petitioner of the ability to discharge his duty to his client. The disqualifying conflicts of interests set forth herein are still unresolved and will remain so unless addressed herein.

6. The natrue of this Petition is necessarily truncated and devoid of certain cites because of the emergency nature of the filing, the lack of access to important supporting documentation and the lack of access to computerized word processing.

1

7. Certain assumptions must first be set forth so that the true nature of the Personnel's actions may be fully and rightfully understood.

8. Petitioner is informed and believes that the Personnel viewed Petitioner's client as a political trophy and were determined to use any and all means, esp. including illegal means to obtain a conviction or a duress-induced plea.

9. Petitioner is also informed and believes that Petitioner's client was desired as a political trophy to such a degree that the same fervor exercised against Knight was transferred and exhibited against the Petitioner, such that Petitioner now writes in bonds from false charges arranged by the Personnel and certain federal court officers to be named further herein.

10. The disqualifying conflicts of interest, yet unresolved, concealed by the Personnel, are now here set forth:

   a. On Aug 14, 2014, Knight was shot 7 times at a nightclub. Biddle was assigned the case. In a Feb 23, 2015 report created by Biddle, he sets forth that Chris Brown, a man named T-money and a man named Boo were responsible for the attempted murder of Petitioner's client. Biddle, for reasons discussed herein, concealed the identity of the shooters and never submitted the information for prosecution.

   b. On Jan 29, 2015, or thereabout, Knight was assaulted by armed gunmen while seated in his truck. Biddle was assigned the case. Biddle concealed the nature of the crime and wrote a report naming Knight as the assailant, despite the fact that the true analysis of the facts was that the armed gunmen were responsible for felonymurder as Knight ran over Terry Carter in his vehicle fleeing the armed gunmen.

   c. Petitioner is aware that Biddle's first disqualifying conflict of interest was that he was assigned cases wherein he was investigating Knight as both victim and as assailant in two separate cases. Then, Biddle, in this conflicted position, concealed the identity of the nightclub shooters because Biddle knew that they bore relation to the armed gunmen at the burger stand (Jan. 29, 2015). (TA136401).

   d. On or around Jan. 14, 2016, Petitioner learned from a confessed confidential informant named Danny Timms that he was asked to work to frame Petitioner's client through false testimony. Timms confessed that he worked for Biddle and others for 12 years putting at least 6 men away through such enterprise. Timms confessed that he was asked to frame Knight in exchange for a lenient sentence for his family member Devin Gonzales. Once Timms, began working for Biddle and other Sheriffs against Knight Gonzales' offer went from 70 years to 6 years, and a plea deal was consummated. Timms disclosed that he had been given Knight's discovery in TA136401, was placed next to Knight in a nearby cell for housing records purposes, and told to work Knight. Timms disclosed that after trying he no longer wished to so work and wanted to aid the defense, which he did. His statement was recorded with the help of Private Inv. John Moore. Timms confessed that he attempted to take Knight's discovery when he bailed out but was prevented by Biddle and others on his way out. Timms revealed also that at prior times when he was not working on the inside that he met frequently with Biddle and others (Sheriffs Brandenburg, Hardiman, DA's Barnes and others) at El Compadre restaurant to discuss "work."

   e. On the same day, or thereabout, Biddle, after learning that Timms had met with the defense investigation team, sought the help of Judge Coen who had been assigned TA136401 and SA089020 on March 2, 2015 for all purposes, including trial. Biddle asked ex parte under seal to terminate Knight's phone, mail & visiting privileges as a means to keep Timms' revelation concealed and to punish Knight for so obtaining and working. Coen was reluctant because he already had terminated Knight's privileges ex parte under seal on March 17, 2015, and had since issued 11 orders conditioning the March 17, 2015 order. Coen knew that to grant Biddle's request ex parte under seal would draw too much suspicion. Coen created an alternative solution. Coen asked Supervising Judge Brandlin ex parte under seal to allow another judge to hear Biddles application. Brandlin granted Coen's request on or around Jan. 15, 2016, desptie the fact that doing so was illegal - the Jan. 15, 2016 order issued ex parte under seal violated People v. Bridges and Gelderman v. Bruner - allowing an all-purpose assignment to be split between two judges. Coen had partially recused himself through his

2

request. The Jan. 15, 2016 created two disqualified judges. Judge Brandlin's order assigned Knight's "confinement and privileges issues" to Judge William C. Ryan. Both Coen and Ryan knew that they were disqualified by Judge Brandlin's order but continued to preside anyway. Thus, the true analysis was and is that every order issued by either judge in TA136401 and SA089020 was and is void from January 15, 2016 on.

    f.    Petitioner began working for his client on on or around May 29, 2015, coming in to the case with Attorney Tom Mesereau. On Jan. 22, 2016, Mesereau met with Coen and Biddle and DA Barnes in chambers to discuss Timms, Petitioner, Moore, Brandlin's order and other business. On January 29, 2016 or thereabout, Judge Ryan issued an order setting forth that he had been assigned Knight's confinement and privileges issues, that he was revoking all 11 conditional orders issued by Coen re: Knight's privileges, and that Knight could thenceforth only communicate by phone with Petitioner, as Mesereau had withdrawn. Petitioner is informed and believes that this January 29, 2016 order was a set-up to begin creating a false narrative against Petitioner and his client. (The January 29, 2016 order issued ex parte under seal also allowed Knight to communicate with another lawyer named Schwartz but his tenure was shortlived and is inconsequential herein).

    g.    Ryan granted at least 6 orders (Petitioner cannot verify due to false incarceration) ex parte under seal based upon ex parte under seal applications from Biddle and DA Stefan Mrakich. On or around Feb. 2016, Ryan issued an order alllowing Biddle to monitor Knight's jail visits and calls with non-attorneys. Then on or around April or May 2016, Ryan issued an order allowing Biddle and Hardiman to monitor Knight's calls and visits with Attorney Matthew Fletcher. Then on or around the same time frame Judge Ryan issued an order allowing Biddle and Hardiman the ability to monitor Knight's phone calls and visits with Petitioner. All orders and applications were conducted ex parte under seal with no hearing or opportunity to be heard.

    h.    The pretextual means through which the above cited orders were obtained are now set forth: On or around April 2016, Biddle and Hardiman along with certain FBI agents (Petitioner could verify the names if he was free) conducted a sting operation. Without any justification, Biddle used a confidential informant identified as KB to work Petitioner, following the same pattern as Timms. Through repeaated calls KB tried to get next to Petitioner to state that he was not at the scene of the burger stand assault but was from the area, was a former member of a Blood gang, and wanted to do whatever was needed to help Petitioner's client. KB was obviously soliciting a bribe and Petitioner knew it. Petitioner wished to continue observing KB to see if KB would tell on the Sheriffs in the same way Timms had. KB tried to frame Petitioner by stating that he could help but needed money. Petitioner never promised KB money but was aware that KB was a potential character, reputation or expert witness and if so used could be given witness fees pursuant to Code. However, Biddle and Hardiman and the Mrakich sought to spin the incomplete exchange into a case, charging Petitioner with solicitation of a bribe. The aforementioned persons also sought to spin the clandestine exchange as a conspiracy. Mrakich would write in pleadings later that Petitioner had worked in cooperation with Attorney Matthew Fletcher simply because Fletcher had passed on the phone number of KB to Petitioner. Petitioner is informed and believes that Fletcher was a confidential informant working for thePersonnel. Fletcher was not an attorney of record during any relevant period set forth herein yet had an indefinite pass from Judge Ryan to visit with Knight. Fletcher regularly attempted to "crash" private meetings with Petitioner and his client at the attorney room in Men's Central Jail. Fletcher routinely would barge in, make ridiculous suggestiongs of illegality and leave. Petitioner is informed and believes that Fletcher's sole purpose in so doing was to assist in framing Knight and or Petitioner. Fletcher's intention was formed because of his need to obtain court favors and assistance in a State Bar trial in which he was engaged at the time these matters were occuring.

    i.    Judge Ryan and Coen knew that Biddle Hardiman and the FBI were conducting a false sting operation through orders granted ex parte under seal by Ryan. Judges Ryan and Coen issued the orders though disqualified to protect Biddle's disqualifying conflicts of interest and to protect the District Attorney's conflict of interest and to conceal their own conflicts of interest - Petitioner posed a great threat to expose

3

the conflicts and Judges Ryan and Coen and Brandlin, Sheriffs Biddle and Hardiman, and District Attorneys Mrakich and Lacey did everything in their collective and cooperative power to eliminate him.

    j.    Judge Ryan and Judge Coen kept the ex parte under seal orders creating the false sting operation concealed for nearly a year and some change, despite knowing that in so doing they concealed conflicts that they created between Petitioner and his client from being known to them. Judges Coen and Ryan knew that concealing the orders regarding KB violated principles set forth in Wood v. Georgia and other similar cases. In that case, the idea is made clear that when a judge knows of a conflict or a potential conflict between an attorney and his client, he must disclose that information immediately. Judges Coen and Ryan withheld the information because it was not in the best interest of the Personnel to do so.

    j.    The Personnel knew that the ex parte under seal orders re: KB violated Title III for several reasons. First, after the original orders permitting Biddle and Hardiman to monitor Petitioners calls and visits with his client, Judge Ryan never required Biddle and Hardiman and Mrakich to apply for an extension after thirty days had expired pursuant to the Penal Code and Title III. As a means of keeping the Personnel's conflicts of interests concealed, Judges Ryan and Coen never required Mrakich or Lacey to notify Petitioner and client that the thirty days had expired. nor the fact that no extension had been applied for, nor required Mrakich and Lacey to interface with the Legislature regarding the notices that were due. Judes Ryan and Coen allowed Biddle and hardiman to monitor Petitioner and his clients calls and visit from May 29, 2015 throughout as a means to determine if any of the calls were violations of law and whether any calls or visits fell within the crime fraud exception. As this Court is aware, the crime fraud exception to the attorney client privilgege can not be used in this manner. First, the Evidence Code requires that when the privilege holders are absent, the judge must preclude themselves from hearing a request to penetrate the attorney client privileged recordings and intellectual property existing between the two. Second, law enforcement officers cannot be given discretion to so monitor privileged calls searching for crime fraud excepted conversations. Third, by allowing the DA's office to proceed in this manner, Judges Ryan and Coen did not require that the DA bring forth the best evidence available before resorting to such extreme measures.

    k.    Every order ever issued by Judge Ryan until August 2017 were issued ex parte under seal without notice or an opportunity to be heard by the defense. Petitioer can prove that Judge Ryan and Coen did so to keep Petitioner from filing a motion to suppress. When Judge Ryan did finally issue an order unsealing the prior sealed orderson or around August 2017 it was to assist the DA in preparing a conflict inquiry filing. Petitioner won the conflict hearing in front of Judge Coen. However, despite this, Mrakich and Lacey sought a grand jury indictment and did obtain such an indictment against Petitioner even though ALL of the evidence in the case was fraudulently procured and the Personnel knew it without a doubt.

    l.    After Petitioner learned of the false sting operation and the orders creating it, Petitioner filed a motion to set aside Judge Brandlin's original January 15, 2016 order as void ab initio, as the order created two disqualified judges. The hearing was held on January3, 2018, in front of now Supervising Judge Gordon. Judge Gordon assisted his judicial mates Ryan and Coen and denied the order even though he was obligated to find that the judges were disqualified as a matter of law. As Petitioner was preparing a filing before the Court of Appeal regarding Gordon's denial, he was arrested by Biddle and Hardiman on January 23, 2018 or thereabout.

    m.    Biddle and Hardiman told Petitioner that he was being arrested for accessory to murder but did not show him an arrest warrant or indictment. Petitioner would learn later that Biddle and hardiman were working based upon their own Romero warrant . Petitioner was held in Sheriff custody for 23 hours. Petitioner met with Biddle and Hardiman for approximately 6 minutes. In that 6 minutes, Petitioner set forth the information set forth above. Petitioner was released approximately 6 hours later. (Biddle and Hardiman had also accosted Petitioner at his home the day after the Mayweather v. McGregor fight to intimidate him and to get him from pursuing his investigation.)

4

n.  After Petitioner was released from Sheriff custody, Petitioner immediately filed a subpoena requesting all of the information set forth herein above. Petitioner serve Biddle and Hardiman with subpoenas requesting information regarding the false arrest. County Counsel for the Sheriff filed oppositions to the subpoenas, even though the law requires the only the District Attorney submit documents in a prosecution. On at least two other occasions, Judge Ryan permitted County Counsel to argue in the DA's stead, even thought this is not allowed under the California constitution and Codes.

o.  Petitioner is writing this Petition under sever time constraints and duress. Petitioner is working to provide this Court with the relevant information as a means to make the Court aware of unresolved conflicts of interests that have resulted in the false incarceration of Knight, Toilin Kelly, Marke Blankenship and the undersigned.

p.  On or around March 5, 2015, Petitioner was indicted by the DA's office. The indictment stated that the grand jury proceedings were being conducted at the time Petitioner was being falsely arrested. The charges are all supported by Judge Ryan's disqualified, void orders. The indictment was sought by the DA with malice. The DA sought to destroy the attorney client privileged relationship existing between Knight and the Petitioner through the fraudulent court filing. The DA sought to protect the conflicted interests of the Personnel also with the same.

q.  The indictment received by Petitioner was not signed by the jury foreman. Additionally, when Petitioner filed a peremptory challenge against Judge Gordon, to whom Petitioner's arraignment was assigned, the Petitioner learned that the indictment was not signed by Stan Kadohat, the Supervising Judge's normal clerk. Finally, the proceedings were conducted by a District Attorney officiant with no clerk assistance.

r.  Judge Coen forcibly removed Petitioner on or around March 12, 2018, citing the grand jury indictment. Judge Coen acted with malice against Petitioner to protect the interests of the Personnel.

s.  Mrakich presented no exculpatory evidence to the grand jury. Mrakich presented no evidence of the disqualifying conflicts of interests held by the Personnel to the grand jury.

t.  In ex parte under seal orders issued by Judge Ryan in the June 2017 timeframe, Judge Ryan ordered that the DA give scores and scores of illegally procured record belonging to Petitioner and Knight toother attorneys on Knight's other cases. Petioner became aware and warned Attorney Jeremy Lessem not to accept the DA's discovery. Lessem accepted the attorney client privileged communications belonging to an attorney other than himself and stated to Petitioner that he must accept the privilege communications as to not do so might result in his malpractice, as the DA's might intend to further prosecute Knight based on material within the privileged communications. Later, around October 2017, Lessem filed an oppostion to the DA's forced imposition of the privileged material upon him, but too late. Lessem was only covering for himself as he knew Knight was soon to fire him. Lessem had Moore log tons of hours listening to prvileged material that was neither of their concern. Judge Ryan on behlaf of Judge Coen ordered the DA to disseminate the priviled material amongst other members of Knight's defense camp because Rayn knew that doing so would cause confusion, division and would further taint the case. Mrakich in response to the oppisition filed by Lessem informed Judge Ryan that the DA had only procured 4 hours or 4 recordings through the sting operation. In truth the DA had acquired and monitored 633 separate privileged recordings as was set forth in a protective order filed on October 4, 2017.

u.  When Petitioner was arrested on January 23, 2018, or thereabout, Biddle and Hardiman stole Petitioner's phone and mail. Biddle and Hardiman gave the phone mail to the Government and AUSA Draglin. Draglin and the Government sought Petitioner phone and mail for additional means to charge Petitioner.

v.  The Government filed the case against Petitioner to assist the Personnel and to cover its own exposure. The FBI assisted Biddle and Hardiman and conducting the sting operation. Petitioner had sought the help of the FBI to inform them that Biddle, Hardiman, Coen, Ryan and Mrakich were operating against Knight and Petitioner

5

with malice and in bad faith to cover over the fact that the Personnel were actively using their combined judicial, attorney and law enforcement power to conceal the identity of the attempted murder assailants at the nightclub and to conceal the true nature of the crime and the assailants who commited it at the burger stand. One FBI officer in particular was willing to help the Petitioner expose the conspiracy and cover up but felt that he could not do so until the issue of Judge Ryan and Judge Coen disqualification was proved in court. Thus, the Government, through AUSA Draglin used a colorable claim to arrest, charge and detain the Petitioner, so that Petitioner could not expose the Government's divided FBI house.

   w.   Petitioner is innocent of the crime charged by the Governement. Petitione acted as escrow, was operating according to escrow instructions, received only escrow fees, performed due diligence before filing, including but not limited to, contacting the State Bar's ethics hotline to determine the correct manner to perform the process. The Governement never inquired or analyzed whether Petitioner possessed an innocent construction for the action taken under the charge. Moreover, Petitioner can prove that the Government did not care but acted with malice and reckless disregard of Petitioner's life, reputation, practice and career because its interests were aligned with those of the Personnel insofar as it sought to extinguish Petitioner as a viable means of exposing the Government's conflicts of interests, same as those of the Personnel.

   x.   The Government's bad faith may be noted in the time it sought to use maritime garnishment process of arrest against the Petitioner. Following the pattern set by the Personnel, the Government, through AUSA Draglin, arrested Petitioner three days before Knight's sentencing. Petitioner was writing the substance of the informat ion set forth herein at the time treasury agents arrested him. The Governement was aware that in so doing, it nearly completely eliminated Petitioner's ability to assist his client.

   y.   The Personnel and the Covernment together used the collective power between them to negatively portray Petitioner and his client in the media. Petitioner is still on duty as an attorney and officer of the court as he writes this petition. Petitioner has in his possession a check from the financier of both the attempted murder and the assault. Petitioner is in posession of witness statements proving the true nature of the assault at the burger stand.

   z.   Judge Coen at some point in the last two months ordered Moore to give over all of his reports and findings to the court. Moore did not wish to do so, because he was aware that to do so would severely hinder Knight. Knight just days before his plea arrangement sought to dismiss his court appointed attorney because he knew the attorney was not acting in his best interest. This attorney and his appointment is void, as it was ordered by disqualifed Judge Coen. Knight's plea bargain and sentencing is also void.

   aa.   Petitioner seeks a stay of TA136401, the present case against Petitioner brought by the Government, BA453095, People v. Toilin Kelly, People v. Blankenship, Carter v. Universal Studios, and any and all cases wherein Knight is a defendant. Staying these actions is the only way Petitioner may discharge his duty to his client and his duty to the public and society at large. "He that is first in his own cause seemeth just." The Personnel and the Government have moved first, falsely arresting, charging, and detaining Petitioner only because he sought to discharge his duty to his client by bringing the truth to light regarding what the group had done.

   bb.   Further, the Government is without standing and is operating pursuant to gross conflicts of interests. Through the machinations of the Federal Reserve Act. the Government had and is continually mortgaging Petitioner and his client's personalty as collateral for the Government's applications for credit. The Government is indebted to the Petitioner and his client in a sum that far exceeds any claims that the Government might claim. Additionally, the Government has brought the present action against Petitioner (Petitioner is unaware of the case number) without disclosing the nature of the fraud and debt owed to Petitioner. In short, the

6

Government has unclean hands. The Government is also operating under an extreme conflict of interest. Petitioner is a secured party creditor with a security interest in all the proceedings set forth herein and in all of the assets of the Government. As a secured party creditor, Petitioner is the prime collateral for the credit based monetary system utilized by the United States and its corporate instrumentality. However, the United States consistently acts in the best interest of the secondary creditor and against the best interest of the prime creditor, the Petitioner herein. This is evident in the fact that the Governement prior to or contemperaneously with its filing of a charge against the Petitioner failed to disclose its conflict of interests and its debt position vis-a-vis the Petitioner.

cc.   The Government is also operating pursuant to admiralty jurisdiction without notifying the Petitioner, who, as one of the People, is entitled to know pursuant to the VI amendment the nature and cause of the charges against him. By proceeding under admiralty, the Government has attempted to steal Petitioner's constitutional rights, as the constitution is not applicable in admiralty actions. The Government has brought a statutory charge against Petitioner but has not revealed the contract that puts Petitioner in contractual privity with the Government such that the statutory contract provision charge could be used to arrest or detain Petitioner.

dd.   The Governement is not proceeding under the judicial power set forth in Article III, section 2, but is operating pursuant to Article I, section 8, clause 17. Additionally, Petitioner can prove that the Government, in charging Petitioner with a statutory crime without contractual privity, is attempting to surreptitiously charge Petitioner as a 14th amendment US citizen with a small 'c' instead of proceeding against Petitioner as an American Citizen, as one of the People and Posterity who ordained the Constitution.

ee.   Petitioner is aware, as a secured party creditor, that the Government & its corporate instrumentality is bankrupt and insolvent. As such, the Government cannot address the debt owed to its creditors. Yet, the Government, operating with the credit made available to it by the collateral that is the Petitioner, continues to charge defendants daily without disclosing the fraudulent nature in which it has procured the credit used to those to whom it owes the duty of disclosure. Because of its bankrupty position, the Government continues to act in the best interest of the secondary creditor to continually obtain the issuance of credit needed to operate. This conflict is harmful to the Petitioner and those similarly situated as the Government ignores its duty to the Petitioner in favor of the secondary creditor. In sum, the Government is operating de facto, and is not in a sufficient credit standing to bring claims.

ff.   With respect to the claim of bank fraud, there are no harmed parties. As a secured party creditor with standing, Petitioner invokes his common law defense and rights and duties. As such, the Government, through AUSA Draglin cannot produce a corpus delicti, neither a body of harm in the form of harmed persons or an actual debt as the credit based monetary system operates upon a system of credits and debits and no value changed hands at any times, as well as the fact that the Petitioner operated in good faith and according to duty.

PRAYER FOR RELIEF

A.   For a judicial officer to preside over this Petition pursuant to Article III, Section 2.

B.   For an Article III judge to stay the above listed actions so that Petitioner might prove:

Conspiracy to violate Petitioner and his clients United States Constitutional rights, pursuant to 28 USC 2241, 2242. Petitioner can prove that the Personnel worked as agents of one another and in cooperation with and through the help of the Government, specifically ASUA Draglin, to conceal the identity of attempted murders, murders and conspirators who operated to commit the same, instead of discharging their lawful duties. Petitioner can prove that the Personnel and the Government sought to

7

effectuate their own personal interests instead of discharging their rightful duty, even knowing that preferring their own personal and group interests meant falsely arresting, charging, detaining and incarcerating several innocent persons.

In connection with the claim, Petitioner can prove that the Personnel and the Governement concealed their intentional failure to properly discharge its duties so that it could continue to operate with impugnity.

The Personnel and the Government's action, through Draglin, denied Petitioner's right to be secure in his paper, person and effects - their collective action has presently removed, and falsely so, from his home, family, evidence, discovery and cases. The collective action of the Personnel and the Government has denied Petitioner his constitutional right to apply Article VIII, IX, and X in his favor. The collective action of the Personnel and the Governement as set forth herein and incorporated by reference in all of the above numbered and unnumbered paragraphs has denied Petitioner of his right to a republican form of government.

The Personnel's constant use of ex parte sealed orders denied Petitioner and his client, as Petitioner worked for his client's freedom, of the VIth amendment right to act as counsel, and Petitioner and his client's Vth amendment right to confront witnesses and accusations against the attorney client relationship unit.

By operating through ex parte sealed orders, concealing those orders, and operating in a disqualified fashion, the Personnel stole Petitioner's right to due process, substantive due process and the equal protection of all the laws.

Petitioner can prove that Mrakich and Lacey operated against their own professional and legal duties and in the interests of the Personnel because both knew that in 2016 alone, the DA had approximately 25 open wiretaps that violated Title III. Petitioner can prove that the Mrakich and Lacey operated against Petitioner because he was aware that the DA was regularly opening wiretaps with the intention to use them in a manner that circumvented informing the Legislature regarding the status of the same.

Fraud

Petitioner can prove that the Personnel utilized fraud to run a false sting operation that violated Title III, that the false sting operation was designed and did operate to fraudulent remove Petitioner from his lawful post as attorney of choice of his client, that the Personnel operating with malice and fraud to ensure that Petitioner did not have a means to publically disclose the true nature of the TA136401 case, and those that sprang from it.

Petitioner can prove that the Personnel were aware, and that the Governement was aware, that Personnel used fraud to gain a position of superiority over Petitioner and his client, that the Personnel used fraud to covet, steal, monitor and disseminate the sacred, privileged attorney client communications and records belonging to Petitioner and his client, that the theft was to secure themselves against exposure of their crimes.

Petitioner can prove that the Government knows that it does not have the proper credit standing to charge Petitioner with defaulting on any statutory provision, that the Governement owes Petitioner for years worth of use of his personlty and person as collateral for the credit based monetary system without his knowledge, that the Government's use of this procedure without Petitioner's knowledge results in fraud and that the Government's failure to disclose the fraud and the debt is sufficient proof of fraud.

Adversary Hearing pursuant to Supplemental Rule E

Petitioner hereby invokes all of the applicable provisions of the above listed Rule to effectuate a prompt hearing whereby he may prove that his present arrest and detention should be forever vacated and that the Government should be required to put

8

sufficient security to address the claims made by Petitioner herein. Petitioner is in bonds and cannot get to Standard Forms 1414, 1416, 1418, Optional Forms 90 and 91 and Standard Forms 273 and 274. Petitioner requests an immediate release of the detention imposed by the Government to procure these forms and put forth sufficent security representative of twice the aggregate amount claimed by the Governement, and by doing so remove Petitioner's body (vessel) from the controversy as a means to address the debt claimed by the Government.

C. For an order creating a prompt hearing pursuant to the Rule cited above or its applicable equivalent.

D. For an order dismissing all actions wherein Judge Ryan or Judge Coen's orders issued in TA136401 have found place.

E. For an order finding the Government complicit with the actions of the Personnel and dismissing the Government's action against Petitioner.

F. For an order releasing Petitioner from the custody of L.J. Milusnic, Warden of Men's Detention Center, Los Angeles.

## NOTICE OF INTERESTED PARTIES

1. All persons named herein.

2. Universal Studios

3. All persons listed in Lillian Carter v. Universal Studios. where the truth is set forth in Knight's cross-complaint.

*Petitioner placed the notice to interested parties herein becuase of lack of paper. Petitioner does not know all of the names that could be listed without reference to his notes and papers, which are elsewhere.

## VERIFICATION

I hereby swear and affirm under penalty of perjury under the laws of the state of California that the foregoing is true and correct and was executed in Men's Detention Center in Los Angeles. All rights reserved and retained.

October 8, 2018

Thaddeus J. Culpepper, Esquire
Secured Party Creditor In pro per

9